[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14114

_____

DANIEL A. RODRIGUEZ,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23867-JEM

_____

Before JILL PRYOR, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Appellant Daniel A. Rodriguez filed a motion under 28 U.S.C. § 2255 challenging the 37-month sentence the district court imposed upon revocation of his supervised release. Rodriguez argues that the sentence was illegal because it exceeded the 24-month statutory maximum.

The district court concluded that it lacked jurisdiction over Rodriguez's § 2255 motion because Rodriguez was not "in custody" on the revocation sentence when he filed his § 2255 motion. 28 U.S.C. § 2255(a). The court therefore denied the motion. Because we agree with the district court that Rodriguez was not in custody *on the revocation sentence* when he filed the motion, we affirm.

I.

In 1994, Rodriguez was charged with several crimes including two counts of being a felon in possession of a firearm (the "1994 criminal case"). He was convicted of the felon-in-possession charges and sentenced to 272 months' imprisonment followed by a term of supervised release. After the Supreme Court handed down its decision in *Johnson v. United States*, 576 U.S. 591 (2015), Rodriguez filed a § 2255 motion challenging his sentence as unconstitutional. The district court granted the motion and reduced Rodriguez's sentence to 120 months (10 years) of imprisonment followed by a term of supervised release By that time, Rodriguez had

already served approximately 19 years of his 272-month sentence, so the district court adjudged him eligible for immediate release. The Bureau of Prisons ("BOP") calculated that Rodriguez had over-served his 10-year sentence by 3,587 days.

Upon his release from prison, Rodriguez began to serve his term of supervised release. In 2017, while he was on supervised release, he was caught selling and sending controlled substances to federal prisoners and laundering the proceeds. Based on this new criminal conduct, the government initiated proceedings to revoke Rodriguez's supervised release (the "revocation proceedings") and a new criminal case (the "2017 criminal case"), in which he was charged with drug-distribution and money-laundering offenses.

In the revocation proceedings, the district court found that Rodriguez had violated the conditions of supervised release imposed in the 1994 criminal case, revoked his supervised release, and imposed a 37-month custodial sentence. Rodriguez served no additional time on the revocation sentence, however, because the BOP gave Rodriguez credit for the time he had previously overserved on the sentence imposed in the 1994 criminal case. Thus, the revocation sentence was discharged on the same day that it was imposed, April 10, 2018. After the revocation sentence was discharged, Rodriguez was left with 2,461 days of banked time from his overservice of the sentence from the 1994 criminal case.

In the 2017 criminal case, Rodriguez pled guilty to drug-distribution and money-laundering offenses. At the sentencing

hearing, the district court calculated Rodriguez's Sentencing Guidelines range as 360 to 5,280 months' imprisonment.

After considering the sentencing factors set forth at 18 U.S.C. § 3553(a),[1] the district court imposed a sentence of 400 months followed by a term of supervised release. In imposing this sentence, the district court expressly considered the nature and circumstances of the offense, including that Rodriguez sent controlled substances into more than 40 percent of federal prisons. The court noted, among other things, the problems that inmates who use controlled substances create for BOP staff. The court also considered Rodriguez's personal history and characteristics, including his extensive criminal history, that he had been in prison for nearly all of his adult life, and that shortly after being released from prison he engaged in new criminal conduct. After pronouncing a sentence of 400 months, the district court noted that the sentence would have

---

[1] Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

been 480 months "but for the fact that [Rodriguez] had that seven years overserved." 2017 Criminal Case Doc. 633 at 31.[2]

After Rodriguez was sentenced, he requested that the BOP apply the remainder of his banked time against the 400-month sentence imposed in the 2017 criminal case. Although a BOP employee previously had told Rodriguez that he would receive credit for the banked time, the agency ultimately determined that he would not receive any credit. Rodriguez filed a 28 U.S.C. § 2241 petition in the Western District of Virginia challenging the agency's decision. The district court in that proceeding dismissed the petition after concluding that the BOP "correctly calculated Rodriguez's sentence." *Rodriguez v. Streeval* (*Streeval I*), No. 20-cv-197, 2021 WL 1893553, at *4. (W.D. Va. May 11, 2021). The district court's decision was affirmed on appeal. *Rodriguez v. Streeval* (*Streeval II*), No. 21-6807, 2021 WL 5072075 (4th Cir. Nov. 2, 2021) (unpublished). The BOP currently projects that Rodriguez will compete his custodial sentence on May 4, 2046.

In September 2019, several months after the district court imposed the sentence in the 2017 criminal case, Rodriguez filed this § 2255 motion challenging the 37-month sentence imposed in the revocation proceedings. The district court concluded that it lacked jurisdiction to review the merits of the claim because Rodriguez was not in custody on the 37-month sentence when he filed the §

---

[2] "2017 Criminal Case Doc." numbers refer to the district court's docket entries in the 2017 criminal case.

2255 motion. The district court explained that Rodriguez's revocation sentence "fully expired the date this Court imposed it . . . on April 10, 2018." Doc. 36 at 4.[3] Therefore, the court concluded, Rodriguez was no longer in custody on that sentence when he filed his motion more than a year later.

This is Rodriguez's appeal.

## II.

Whether a prisoner seeking relief from a sentence is "in custody" for purposes of 18 U.S.C. § 2255 is a jurisdictional question. *See Diaz v. Fla. Fourth Jud. Cir. ex rel. Duval Cnty.,* 683 F.3d 1261, 1263 (11th Cir. 2012). We review *de novo* a district court's denial of a § 2255 motion for lack of jurisdiction. *Id.*

## III.

Section 2255 authorizes a federal district court to review a motion filed by a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that . . . the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). Rodriguez argues that he is entitled to relief under § 2255 because the 37-month sentence imposed in the revocation proceedings exceeded the statutory maximum sentence available, which was 24 months.

---

[3] "Doc." numbers refer to the district court's docket entries in this case.

Before addressing the merits of Rodriguez's challenge to the revocation sentence, the district court properly examined whether it had jurisdiction to review his motion. A district court has jurisdiction to review a § 2255 motion when the prisoner was "in custody" on the sentence he challenges at the time his motion was filed. *Id.* § 2255(a); *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (explaining that the statutory "in custody" requirement is satisfied when the prisoner "was incarcerated . . . at the time the petition was filed").[4]

After careful consideration, and with the benefit of oral argument, we conclude that Rodriguez was not in custody on the revocation sentence when he filed his § 2255 motion. The record reflects that the district court imposed the 37-month revocation sentence on April 10, 2018. Because the court gave Rodriguez credit for the banked time that he previously had overserved on the sentence imposed in the 1994 criminal case, the revocation sentence was fully discharged on the same day that it was imposed. Rodriguez filed his § 2255 motion over a year later, in September 2019. The district court therefore correctly concluded that when he filed the motion, he was not in custody on the sentence being challenged.

---

[4] The habeas corpus statute codified at 28 U.S.C. § 2254(a) contains the same "in custody" language. Because of the identical language, we rely on decisions construing § 2254's "in custody" requirement. *See Clements v. Florida*, No. 21-12540, __ F.4th __, 2023 WL 1860620, at *4 n.2 (11th Cir. Feb. 9, 2023).

Rodriguez argues that, despite the immediate discharge of his revocation sentence, based on the Supreme Court's decision in *Garlotte v. Fordice*, 515 U.S. 39 (1995), he remained in custody on the revocation sentence at the time he filed the § 2255 motion. We disagree.

In *Garlotte*, the Supreme Court recognized that in narrow circumstances a prisoner may challenge in a habeas proceeding an already-expired sentence. Harvey Garlotte pled guilty in Mississippi state court to a drug offense and two counts of murder. *Id.* at 41. At sentencing, the state court imposed a three-year sentence for the drug count and two concurrent life sentences on the murder counts. *Id.* at 41–42. The state court directed that the three-year sentence be served first, followed by the concurrent life sentences. *Id.* at 42. Later, Garlotte filed a federal habeas petition challenging his drug conviction. *Id.* By the time he filed the petition, he had completed the sentence for the drug offense and was serving the life sentences. *Id.*

The Supreme Court considered whether Garlotte was in custody on the drug offense when he filed the habeas petition challenging that offense. *Id.* at 41. Although he had already completed the three-year sentence imposed for the drug offense, the Court held that he remained in custody on that offense. *Id.* at 45–47. The Court reasoned that because the challenge to his drug conviction, if successful, would "advance the date of his eligibility for release from [his] present incarceration," the *consecutive* sentences should be viewed "in the aggregate, not as discrete segments." *Id.* at 47.

Thus, it concluded, the defendant remained "in custody," for habeas purposes, on the first sentence even though the sentence technically had expired. *Id.*

Rodriguez argues that under *Garlotte* he remained "in custody" on the revocation sentence at the time that he filed the instant § 2255 motion. He concedes that to satisfy the standard *Garlotte* established, he must show that obtaining relief on his § 2255 motion would advance the date of his eligibility for release from the sentence imposed in the 2017 criminal case. Rodriguez maintains that he satisfied this standard because if he prevailed on his challenge to the revocation sentence it "would accelerate his release from" the sentence imposed in the 2017 criminal case. Reply Br. at 14 (relying on *Fox v. Kelso*, 911 F.2d 563 (11th Cir. 1990)).

Rodriguez has offered two theories about how granting his § 2255 motion would advance the date of his release from the sentence imposed in the 2017 criminal case. First, in the initial round of briefing to this Court, he argued that if he prevailed on his § 2255 motion, the BOP would award him credit against the sentence imposed in the 2017 criminal case. He maintained that the BOP either had credited or would credit the banked time that he had overserved on the sentence imposed in the 1994 criminal case. He posited that if his revocation sentence were reduced by the 13 months the district court unlawfully imposed in the revocation sentence,[5]

---

[5] Thirty-seven months minus the statutory maximum of 24 months is 13 months.

he would have 13 months of additional banked time that the BOP would credit against the sentence imposed in the 2017 criminal case. Later, in supplemental briefing and at oral argument, Rodriguez advanced a second theory: if he prevailed on this § 2255 motion, the district court, rather than the BOP, would subtract 13 months from the sentence imposed in the 2017 criminal case. We address each argument in turn.

Rodriguez's first theory implicates how the BOP's calculated his sentence in the 2017 criminal case. "A defendant convicted of a federal crime has a right under 18 U.S.C. § 3585(b) to receive credit for certain time spent in official detention before his sentence begins." *United States v. Wilson*, 503 U.S. 329, 330 (1992). According to § 3585(b):

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). The Attorney General, acting through the BOP, possesses the authority to compute such sentence-credit awards under the statute. *Wilson*, 503 U.S. at 334–37.

Rodriguez initially argued that under § 3585(b), the BOP, in calculating his sentence for the 2017 criminal case, was required to award him credit for his banked time. But at oral argument Rodriguez acknowledged that, in calculating the sentence imposed in his 2017 criminal case, the BOP had not awarded him any credit for banked time. And when he brought a § 2241 proceeding challenging the BOP's decision, he was unsuccessful, both before the district court and on appeal. *See Streeval I*, 2021 WL 1893553, at *4 (concluding that the BOP had "correctly calculated Rodriguez's sentence" under § 3585(b) because Rodriguez was "not entitled to have the remainder of his overserved time credited toward" the sentence imposed in the 2017 criminal case), *aff'd Streeval II*, 2021 WL 5072075, at *1. Given the BOP's decision and Rodriguez's unsuccessful challenge to it, even if the instant § 2255 motion were granted, resulting in an additional 13 months of banked time, there would be no effect on the BOP's calculation of Rodriguez's release date for the sentence imposed in the 2017 criminal case.

We now turn to Rodriguez's second theory, that if he prevailed on the instant § 2255 motion the district court would exercise its discretion to shorten his sentence in the 2017 criminal case. To support his argument, Rodriguez points to statements the district court judge made at sentencing in the 2017 criminal case. These statements showed that the judge considered the amount of

banked time Rodriguez had accrued from the overserved sentence in the 1994 criminal case and reduced the sentence it otherwise would have imposed in the 2017 case by that amount of time. Rodriguez says that if he had accrued 13 more months of banked time, his sentence in the 2017 criminal case would have been 387 months instead of 400 months. Rodriguez thus predicts that if he prevailed on this § 2255 motion, the district court would resentence him in the 2017 criminal case to a shorter sentence.

Rodriguez's position rests on the following assumptions: (1) if he prevailed on the § 2255 motion, he would be entitled to a resentencing in the 2017 criminal case, and (2) at resentencing, the court would award him a 13-month reduction in his sentence. Even if we assume that the district court would have the authority to resentence Rodriguez on the sentence imposed in the 2017 criminal case, his assertion that the court would award a sentence reduction is based on pure speculation.

At a resentencing, the decision whether to award Rodriguez a further reduction of 13 months based on his banked time would rest entirely within the sentencing judge's discretion. *See Concepcion v. United States*, 142 S. Ct. 2389, 2399–2400 (2022) ("[T]he discretion federal judges hold at initial sentencings also characterizes sentencing modification hearings."). Indeed, Rodriguez effectively conceded this at oral argument when he acknowledged that in sentencing him in the 2017 criminal case, the district court judge relied on her *discretion* when she awarded him an 80-month reduction based on the time he had previously overserved. Similarly, at a

resentencing the judge would have discretion, but not be required, to give Rodriguez credit for any additional banked time. The judge could consider not only Rodriguez's additional banked time but also the record from the previous sentencing hearing as well as evidence developed after the initial sentencing hearing, including evidence of his "rehabilitation" or "disciplinary infractions" in prison. *Id.* at 2401. Based on the record and the § 3553(a) factors, the sentencing judge could decide to reduce Rodriguez's sentence from 400 months to 387 months based on his additional 13 months of banked time. Alternatively, the judge could decide that a 400-month sentence remains reasonable and award no reduction. After considering the district court's broad discretion at sentencing, we are not convinced by Rodriguez's argument that if he prevailed in this § 2255 motion, the district court would shorten his sentence imposed in the 2017 criminal case.

As we noted above, Rodriguez concedes that to be entitled to relief under *Garlotte* he must show that granting his § 2255 motion would advance the date of his eligibility for release from the sentence imposed in the 2017 criminal case. Because Rodriguez failed to make this showing, we conclude that he was not in custody on the revocation sentence at the time he filed the instant § 2255 motion.[6]

_____

[6] Rodriguez argues that even if he cannot satisfy *Garlotte*, the district court had jurisdiction to review his § 2255 motion because an exception permits a

## IV.

For the above reasons, we affirm the district court's order denying Rodriguez's § 2255 motion based on lack of jurisdiction.[7]

**AFFIRMED.**

---

district court to review a challenge to an expired sentence in a "situation[] in which 'no channel of review was actually available to a defendant with respect to a prior conviction, due to no[] fault of his own.'" Appellant's Br. at 20 (quoting *Daniels v. United States*, 532 U.S. 374, 383 (2001) (plurality opinion)). But even on its own terms, *Daniels* deals with challenges to sentences that have been enhanced due to previously expired convictions, not to challenges to the expired conviction itself. *See* 532 U.S. at 376 (majority opinion). So the exception that a plurality of the Court would have recognized in *Daniels* could not apply to this case.

[7] Rodriguez also argues on appeal that the district court judge erred by refusing to recuse himself from this case. Even assuming Rodriguez is right, any error was harmless because of our conclusion, under a *de novo* standard of review, that the district court lacked jurisdiction. *See Parker v. Connors Steel Co.*, 855 F.2d 1510, 1527–28 (11th Cir. 1988).